[Cite as *State v. Lumbus*, 2013-Ohio-4592.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99301**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRIAN LUMBUS, JR.

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556136

**BEFORE:** Boyle, P.J., Keough, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEES**

Sherri Bevan Walsh
Summit County Prosecuting Attorney
Heaven DiMartino
Assistant Prosecuting Attorney
Summit County Safety Building
53 University Avenue, 6th Floor
Akron, Ohio   44308

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Brian Lumbus, Jr., appeals his conviction and sentence. He raises two assignments of error for our review:

1. Brian Lumbus's guilty plea was neither knowing nor intelligent because he was not told when he entered it that the trial court was not bound by the terms of the agreement that prompted it.

2. The trial court violated Brian Lumbus's rights under the Sixth Amendment and the Due Process Clause when, after denying his motion to vacate his guilty plea, it imposed a sentence of five years rather than the three-year term to which he had previously agreed.

{¶2} Finding merit to this appeal, we reverse and remand.

Procedural History and Factual Background

{¶3} In November 2011, Lumbus and several codefendants were charged in a 12-count indictment. Lumbus was indicted on 11 of the 12 counts, including one count of engaging in a pattern of corrupt activity, two counts of conspiracy, two counts of grand theft, possessing criminal tools, and five counts of identity fraud. Many of the charges included various forfeiture specifications. The charges arose from allegations that Lumbus and his accomplices bought electronics in Cincinnati with fraudulent identification and credit cards. The suspects transported the electronics to Cleveland where they were sold. The stolen property was recovered from buyers and from Lumbus. The amount of theft was alleged to be between $15,000 and $20,000, and the alleged value of the receiving stolen property charge was approximately $7,000.

{¶4} In August 2012, Lumbus withdrew his former not guilty plea and pleaded guilty to three counts: Count 1, engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), with forfeiture specifications; Count 4, grand theft in violation of R.C. 2913.02(A)(3); and Count 12, identity fraud in violation of R.C. 2913.49(C), with forfeiture specifications. The remaining counts were nolled by the trial court at the request of the state.

{¶5} At Lumbus's plea hearing (which was a joint plea hearing with one of the codefendants, Talanda Woods), the state outlined the three offenses to which Lumbus had agreed to plead guilty, along with the attendant forfeiture specifications. As part of his plea agreement, Lumbus agreed to forfeit all property as listed in a separate journal entry that was dated the same day as the plea agreement. The state read the list of property to be forfeited into the record. The state noted that the court had a copy of the written plea agreement.

{¶6} The written plea agreement indicated the three offenses to which Lumbus was pleading guilty, and it outlined the offenses that would be nolled by the court. The plea agreement then stated:

Brian Lumbus, Jr., agrees to additional plea conditions:

1. Codefendants must both plead guilty as a packaged plea.

2. AGREED must cooperate with all local, state, and federal authorities and must testify truthfully in all hearings and trials against all defendants and accomplices.

3. AGREED sentence of three (3) years. No judicial release.

4. As a condition of the plea by agreement of the parties, and by order of this court, the defendant is not to receive judicial release, furlough, shock incarceration, the Intensive Program Prison (IPP), or other early release from prison.

5. Forfeit all items seized.

6. AGREED this plea mark is packed with defendant's other cases: CR 556112.

**{¶7}** The state further explained:

Part of his particularized plea agreement is that he and Ms. Woods will be pleading guilty in a package here and in their next case that we will address somewhere else that they agree to cooperate with all state, local and federal authorities and testify truthfully in all hearings and trials against any of those defendants and accomplices. And the defense have agreed to and the state recommends and are hopeful that the court will take under advisement and consider to impose a sentence of three years. That will be a complete agreement sentence. No judicial release, no shock, no furlough, no IPP.

**{¶8}** Defense counsel agreed with the state's outline of the plea agreement, but noted for the record that under paragraph two of the written plea agreement, Lumbus had agreed to cooperate fully "regarding certain points of interest." In order for Lumbus to meet with agents and investigators to fulfill this requirement, defense counsel requested that Lumbus remain on bond until the sentencing hearing. The state had no objections to this request.

**{¶9}** The court addressed the case against codefendant Talanda Woods first. As relevant to Lumbus's appeal, the trial court stated (when informing Woods of the maximum penalties associated with each offense): "I'm going to go over for you the maximum sentence that you could face even though we already discussed the possibility

that the recommended sentence would be accepted by the court." The court then discussed the maximum penalty for each offense that Woods was pleading guilty to.

{¶10} After addressing Woods's plea, the court advised Lumbus of the constitutional rights he was waiving by entering into the plea and made sure that Lumbus understood these rights. The court then reviewed each offense that Lumbus was pleading guilty to, as well as the maximum penalty involved with each offense. The court did not say anything about the agreed sentence as set forth in the written plea agreement. Lumbus pleaded guilty to each charge, and agreed to forfeit the property as indicated by the state. Lumbus further stated that he agreed to cooperate with all local, state, and federal authorities and testify truthfully in all hearings against defendants and accomplices. The trial court accepted Lumbus's guilty plea and forfeiture.

{¶11} Defense counsel then stated:

Just to make it clear on the record, I think that will express the intention of the parties in negotiating and reaching this plea agreement as being material considerations [for] the six points that are listed in Mr. Lumbus's plea agreement.

The third paragraph [regarding the "AGREED sentence of three years], the material consideration was that both defendants enter a plea of guilty in a package plea which has occurred here today. Point 2, and a material consideration I know for the state and the Defendant, that he must cooperate with all local, state and federal authorities and must testify truthfully in all hearings and trials against all defendants and accomplices. And I explained to Mr. Lumbus, I don't know if it's on the record, should he fail and violate that material consideration in this agreement, which is essentially a contract, the state has the right and ability to vacate and void this plea agreement and reinstate the indictment. I want Mr. Lumbus to understand that and that's part of the record.

Also, your Honor, as to the remaining conditions, the agreed upon sentence of three years was a material consideration. Again, should that not be imposed, then this plea agreement would be voided and the indictment would be reinstated. He understands there's no judicial release.

And the fourth condition as a condition of the plea is another material consideration by parties that the defendant not receive judicial release, furlough, shock, or early release from prison, and forfeit all items. I should note for the record that most of those items were seized already, Your Honor. He's certainly not going to seek any ownership of them.

The sixth material consideration is that this mark is packaged with the other case. Should he contest that or the state contests that, we have the right and the state has the right to void this plea agreement and reinstate. I think that is different in Mr. Lumbus's case in entering a written contract or plea agreement with the state, and I just want to make sure this was clear on the record.

{¶12} The trial court thanked defense counsel and then asked if it had fully complied with Crim.R. 11. The state and defense counsel replied that it had. The court adjourned the plea hearing.

{¶13} Lumbus's original sentencing hearing was set for September 11, 2012. But Lumbus's defense counsel moved to continue the sentencing hearing because Lumbus had been taken to the emergency room in late August, where he was diagnosed with "severe anxiety illness." Lumbus's sentencing hearing was then set for October 30, 2012.

{¶14} On October 23, 2012, Lumbus's defense counsel moved to continue the sentencing hearing. In the same motion, defense counsel moved for leave to withdraw as counsel based upon irreconcilable differences between him and Lumbus.

{¶15} On October 29, 2012, the court held a hearing on defense counsel's motion to withdraw. Defense counsel informed the court that Lumbus was confused as to why they were at the hearing. Defense counsel requested that Lumbus be referred for psychological testing and that he receive new counsel. The court asked Lumbus why he no longer wanted to be represented by his defense counsel. Lumbus replied, "I just feel like my rights being my, my, rights being denied and stuff like that. Like I really, I really don't know what's going on. I don't know what to say or nothing."

{¶16} In an attempt to help Lumbus with his "confusion," the court reviewed the written plea agreement with Lumbus, as well as his signature on the agreement, asking if he remembered entering into the agreement. Lumbus replied, "I really can't recall. I wasn't taking my medication and stuff. I don't really like remember that though." The court stated, "[w]ell, Mr. Lumbus, I guess we're going to have to start all over again." The court explained that it was going to revoke Lumbus's bond, appoint new counsel if Lumbus could not hire his own attorney, and order a psychological evaluation for him.

{¶17} Lumbus pleaded with the court to "keep the plea" and to keep his current counsel. The court replied, "[y]ou don't remember having entered into this plea and I'm not going to allow it to stand unless you have reasonable representation that you approve of." Lumbus still wanted to "stay with [his current counsel]" and keep the plea. The court indicated that it had no choice if Lumbus could not remember entering into the plea. Lumbus then told the court:

What I'm saying. I remember like me entering the plea and stuff
but like I be, my mind and stuff be kind of racing, like I rather just stick

with him and got with it, like he be telling me ever since I have been taking my medication and stuff. Everything that was going on and I stick with him and just go through and follow through with everything. I don't want to get my bond revoked, I rather just continue with him because I have a psych doctor to go see tomorrow and everything, and I just want to — really, I just want to stick with him, please, your Honor.

{¶18} The court replied, "he's asked to withdraw because he said he can't relate to you." Defense counsel interjected, stating, "I think, your Honor, he should have assigned counsel review this plea agreement when he's able to see if this is what he wants to do. I hate to see him waive this plea agreement." The court granted defense counsel's motion to withdraw, revoked Lumbus's bond, and ordered that Lumbus be referred to the court psychiatric clinic for testing.

{¶19} After the hearing, the court appointed new counsel for Lumbus. But subsequent to that appointment, Lumbus retained counsel who filed a notice of appearance in the case.

{¶20} On November 19, 2012, Lumbus's new counsel moved to reinstate Lumbus's original bond because the court's psychiatric clinic had determined that Lumbus was competent to stand trial and that he was ineligible for the court's mental health docket. In this motion, Lumbus's defense counsel further indicated that Lumbus was "contemplating withdrawing his plea."

{¶21} On November 21, 2012, one week before his sentencing hearing, Lumbus moved to withdraw his plea. In the motion, Lumbus's defense counsel explained that Lumbus, "after being fully advised by current counsel to maintain his agreement with the state, is desirous of withdrawing the plea agreement." Defense counsel further asserted

that "[t]he defendant maintains that he lacked the mental capacity to fully appreciate the ramifications of [the] plea proceedings as a result of his failure to take his medications."

{¶22} Just before the sentencing hearing, the court heard Lumbus's motion to withdraw his plea. Defense counsel told the court that Lumbus had not been taking his prescribed medications at the time of the plea, and as a result, did not fully understand the ramifications of the plea agreement. Defense counsel then stated:

> [I]t appears there's some pending cases that are before Judge Friedland and, quite frankly, what I don't understand as part of the plea agreement is how can you have a plea agreement that has a segmented agreed sentence of * * * three years before this court and leaves that before Judge Friedland somewhat open-ended and I — that concerned me when I reviewed the plea.

{¶23} The state responded that it was "absolutely certain" that Lumbus "knew exactly what he was doing during the crafting of the plea agreement." According to the state, Lumbus "specifically requested" to leave the other case open. The state then explained:

> Initially [Lumbus's previous defense counsel] and I approached this honorable court to see if the court would even entertain the idea of an agreed sentence. And the court, I see wisely, said: Only if there's a written agreement will I do that. And so the state crafted a written statement after much negotiations, after changing the terms of years, and Mr. Lumbus was insistent that he wanted three years as an agreed sentence if this court would offer that and allow that. And in exchange for the three years here, he would roll the dice with Judge Friedland on his other matter of corrupt activity case.

{¶24} The state went on to argue that Lumbus's actions from the time of his plea until the sentencing hearing show that he is "a person who does not want to go to prison," not someone who does not understand what is happening. The state outlined what had

happened since the plea hearing, including what Lumbus did at the October 29, 2012 hearing where he first said that he no longer wanted his defense counsel to represent him and that he did not recall entering into the plea, but then changed his mind. The state opined:

> I find it hard to believe he can't appreciate the ramifications of his plea since it included affects for him and his girlfriend Talanda Woods. And in fact, I'm under the impression that Talanda Woods was ultimately very happy with this plea agreement and this court graciously allowed her to continue with that plea agreement with her even though Mr. Lumbus is the one who decided to derail it when all along we constructed it thinking Ms. Wood would have the problem. In fact, Mr. Lumbus went so far as to try to convince Ms. Woods' attorney that she wanted to change her plea by pretending to be her through email. And as you know, Your Honor, having had Ms. Woods in this courtroom, that is not something a person can engage in while not knowing what is going on around him.

> So I suggest, Your Honor, that the circumstances overwhelmingly point to the fact that Mr. Lumbus is acting like Mr. Lumbus. And now that the handwriting's on the wall he's trying to erase it by playing: I don't remember what happened.

**{¶25}** The trial court indicated that it recalled everything that the state had reiterated because it had been "dealing with this [case] a long, long, long time." The trial court denied Lumbus's motion to withdraw his plea, explaining:

> I recall spending a lot of time making sure that you knew what you were doing. And the — the transcript will certainly support that as well.

> You know all the parties that were involved with this, you know how they pled. Let me be real specific. I'm standing here reading your version of what happened in your handwriting with your signature on it and it says that you agreed to plead guilty in a written plea agreement to an agreed upon sentence for three years because you are guilty. That's what it says on this document that you wrote that you signed. It says that: My written plea agreement requires me to cooperate with the prosecutor. That was important to me because as the prosecutor knows there are other people

involved in this who were not more guilty than me but have never been charged. I pled guilty and accept responsibility for my conduct and agree to serve three years. Now others have to live up to their responsibility.

Mr. Lumbus, it costs a lot of money to prosecute these cases. And the money is paid by taxpayers who really don't need a burden any more than they've had already with you. So I'm not going to allow you to change your plea. And I'm not going to allow you to change your plea mainly because of the information Mr. May put on the record, mainly because of what I heard when I took your plea, and also because of what's on this document that you drafted that is your signature and that is in your handwriting and that suggests that the plea that you entered was the plea that should have been entered.

**{¶26}** The trial court then proceeded to the sentencing hearing immediately following the plea hearing. The state spoke first:

I would ask the court to follow what the court agreed to do. The state has done what the state agreed to do. Ms. Woods has agreed to what she's agreed to do. Mr. Lumbus is left to cooperate or not cooperate on the other case. But he certainly pled in this one and he certainly agreed to three years right out of the gate. In fact, the court could have sentenced him to prison that day. And the only reason he didn't have a sentence that day was because he wanted to cooperate more and provide a statement and we were looking forward to that. He did make a statement, it did implicate other individuals. Typical of his statements, it sought to exculpate him as a leader.

But leadership aside, as we discussed, the activities that Mr. Lumbus engaged in all fit well within the confines of the counts that he'd pled guilty to, engaging in a patter of corrupt activity, identity theft and theft. The entire mission down to Cincinnati was understood, was monitored by the United States Secret Service. The progress of the individuals was followed halfway up the interstate from down there to Cleveland. These parties were followed to a gas station. The individuals who bought iPads were followed and stopped. You had those individuals before you, Your Honor.

\* \* \*

Ms. Woods was the one who provided the iPads to those individuals and took the money and then gave it to Mr. Lumbus. You have dealt with that situation as well.

* * *

Mr. Johnson admitted that he really didn't want to go, but he did, and he ended up driving that truck from the gas station lot to Brian Lumbus's, I think, grandmother's home or maybe aunt. They were followed there as well.

What unfolds after that is typical of Mr. Lumbus. He didn't know who owned the truck. Mr. Johnson didn't know who had the truck. Mr. Johnson had the keys to the truck in his pocket. Grandma allowed the Secret Service to remove the truck from her property and to search her garage. In the process the Secret Service and deputies from the county sheriff's office seized an unbelievable store of items used to make skimming devices, which is something Brian Lumbus said that he was planning to do in one of his many statements to the police when he tells them the truth but kind of denies that he's doing anything wrong now.

Mr. Lumbus has kept his part of the bargain and I will see that, if possible, he will continue to keep his part of the bargain. We will work out some other arrangements for him if he doesn't like the arrangement that he has right now in Judge Friedman's [sic] room. It's pretty much up in the air. However, I would ask the court to impose his three years and then we will continue on moving forward.

{¶27} The trial court responded, "at this point, I'm not inclined and not required to adhere to the three years that you are asking for, you understand that?" The state replied, "Yes, Your Honor, that's correct." Defense counsel then stated:

In light of the court's ruling regarding the motion to withdraw, I would — I would just add that the — the written agreement entered into between the state of Ohio and Mr. Lumbus on the date that the plea was entered is contractual in nature and that, pursuant to Crim.R. 11, the court accepted the terms of the plea agreement. And as Mr. May has indicated, Mr. Lumbus did honor the provisions of that by cooperating with the agents after he entered the plea and simply wanted to invoke his right to have a trial in this matter. So I would be asking the court to follow the mandates of the plea agreement, at least at this particular point, and sentence Mr.

Lumbus to the three years that's agreed upon and accepted by the court at the time of sentencing.

{¶28} The trial court again indicated that it was "not inclined to adhere to the terms" of the plea agreement. The trial court then wanted to hear from Lumbus, stating, "I want to hear you tell me again that you were under the influence of — you were not — you didn't know what you were doing when you gave the plea of guilt and, you know, anything else that you can tell me that will provide allocution as necessary before your sentence is imposed."

{¶29} Lumbus replied that he was not taking his medication when he entered into his plea. He further stated that he felt that his attorney "tricked [him] into taking that plea." He said that his attorney "was threatening [him] and, like, all type of stuff," and he did not trust his attorney anymore. Lumbus further stated,

> [My defense counsel] was just tell me all type of stuff, man, so I didn't trust him no more. Then I was like why's I goin' to jail for engaging in corrupt activity and gotta plead to grand theft and — I didn't stealing no truck, I didn't go into no store, didn't engage in no criminal activity. All I did was transport some iPads from Cincinnati in my car and that's it. That's all I did was receiving stolen property. Everything else I did not do.

{¶30} Lumbus went on to explain that there were nine people involved in the matter and said that the prosecutor knew that. Lumbus reiterated that he did not think it was fair that he had to "plead out to three years for something that I really actually didn't do." Lumbus again stated that he was only guilty of receiving stolen property. Lumbus told the trial court that he would rather "go and have a jury trial and present everything in front of [him]." He stated: "I was handed the iPads to sell them[.] I was just trying to

make a couple dollars off the iPads. I wasn't doin' nothing illegal." Lumbus said that he did not understand how other people did not get indicted because they were the ones who "went into the store and committed all these crimes and presented the IDs to these store clerks and everything and asked for instant credit and everything[.]" Lumbus also said that he felt that his constitutional rights were being violated because he did not understand what was happening when he entered into the plea agreement because he was not taking his medication.

{¶31} The trial court reviewed Lumbus's criminal history, including criminal trespassing and resisting arrest in 1998, aggravated robbery with a firearm in 1998, unauthorized use of a motor vehicle in 1998, two separate convictions of receiving stolen property in 2001 and 2002, drug possession, drug trafficking and possession of criminal tools in 2004, several counts of forgery, uttering, and tampering with records in 2005, forgery and theft in 2007, aggravated theft and complicity in 2007, and theft and identity fraud in 2007.

{¶32} After reviewing Lumbus's criminal history, the trial court sentenced Lumbus to a total of five years in prison: five years for engaging in a pattern of corrupt activity, 12 months for grand theft, and 12 months for identity fraud, all to be served concurrent to one another. The court ordered that Lumbus forfeit all property as agreed. The court also advised Lumbus that he would be subject to a three-year mandatory term of postrelease control.

{¶33} The trial court stated:

Let me explain, Mr. Lumbus. You have not taken responsibility for what you have done. You have tried to tell this court that you lied when you took the plea. You're trying to make this court believe that I had no idea what I was doing when I took your plea and I fully went through great detail with you because I'd already talked about your priors and so I knew that you had no choice but to plead guilty to these charges. And that — that trying to get out from under at this point is — is offensive. It's offensive, Mr. Lumbus. And as a result, you are being — I'm adding on to the plea agreement that you entered into so that you at least understand that this court would have gone along with that three years had you, again, taken responsibility. But you didn't. And since you didn't, I'm concerned that the community really does need to have you put away for a longer period of time so we don't have to live with your behavior anymore.

**{¶34}** Lumbus said that he did not understand because he thought he would receive a sentence of three years in prison.

**{¶35}** Defense counsel objected to the five-year sentence because the court did not follow the agreed sentence set forth in the plea agreement.

**{¶36}** It is from this judgment that Lumbus appeals.

<u>Agreed Sentence as Part of the Plea Bargain</u>

**{¶37}** In his first assignment of error, Lumbus argues that his plea was not knowingly, voluntarily, or intelligently entered into because he did so "based on the understanding that he would receive a sentence of three years imprisonment." In his second assignment of error, he maintains that his due process rights were violated because the trial court "sentenced him to five years rather than the three year term to which he had previously agreed." Because these issues are interrelated, we will address them together.

{¶38} The instructive case in this appellate district on a trial court's deviation from a plea agreement is *State v. Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261, where we explained:

> [A] trial court is vested with sound discretion when implementing plea agreements. *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13 (5th Dist.), citing *Akron v. Ragsdale*, 61 Ohio App.2d 107, 399 N.E.2d 119 (9th Dist.1978). The court is not obligated to follow the negotiated plea entered into between the state and the defendant. *Id.* [O]nce the court approves the plea agreement, [however], its ability to deviate from it is limited. *State v. Allgood*, 9th Dist. Lorain Nos. 90CA004903, 90CA004904, 90CA004905, and 90CA004907, 1991 Ohio App. LEXIS 2972 (June 19, 1991), citing *U.S. v. Holman*, 728 F.2d 809, (6th Cir.1984) certiorari denied, 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984).
>
> * * *
>
> "[T]he law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement *before the court accepts the defendant's plea*, and then deviates from the recommended sentence or terms contained within the plea agreement at the time of sentencing. The analysis in these scenarios turns to due process concerns over *whether the accused was put on* [*notice*] that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea and *whether the accused was given an opportunity to change or to withdraw his plea* when he received this notice." *See*, *generally*, Katz & Giannelli, Criminal Law (1996) 154-155, Section 44.8. n.2 (Emphasis sic.) [*Warren v. Cromley*, 11th Dist. Trumbull No. 97-T-0213, 1999 Ohio App. LEXIS 206 (Jan. 29, 1999),*7-8.]
>
> "A trial court does not err by imposing a sentence greater than 'that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" *Buchanan*, *supra*, at ¶ 13, citing *State v. Darmour*, 38 Ohio App.3d 160, 529 N.E.2d 208 (8th Dist.1987) (* * * no abuse of discretion is present when the trial court forewarns a defendant that it will not consider

itself bound by any sentencing agreement and defendant fails to change his plea).

*Dunbar* at ¶ 112-115.

{¶**39**} It must first be determined "whether the trial court accepted the plea agreement before it deviated from the recommended sentence, and whether [the defendant] was put on notice that the trial court might deviate from the recommended sentence." *Id.* at ¶ 116, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Then it must be determined whether the defendant "had a reasonable expectation that the trial court would implement the agreed sentence." *Id.* at ¶ 129.

{¶**40**} At the plea hearing in this case, when the state outlined the offenses that Lumbus was pleading guilty to, it explained:

> And the defense have agreed to and the state recommends and are hopeful that the court will take under advisement and consider to impose a sentence of three years. That will be a complete agreement sentence. No judicial release, no shock, no furlough, no IPP.

{¶**41**} The state also noted for the record that the trial court had a copy of the written plea agreement that specifically spelled out the agreed sentence of three years.

{¶**42**} Defense counsel pointed out for the record that the six terms addressed in the written plea agreement were material to Lumbus's agreement to enter into the plea, including paragraph three, which stated "AGREED sentence of three years."

{¶**43**} At the plea hearing, the trial court reviewed the maximum penalties that each offense carried with Woods and Lumbus. When discussing the maximum penalties with Woods, the trial court mentioned the agreed sentence, telling Woods that, "I'm going

to go over for you the maximum sentence that you could face even though we already discussed the possibility that the recommended sentence would be accepted by the court."

But that was the only time at the joint plea hearing that the trial court even mentioned the agreed sentence of three years. When addressing Lumbus, the trial court did not say *anything* about the agreed sentence. More importantly, the trial court did not inform Lumbus that it was not bound by the agreed three-year sentence, nor did it advise him that it could impose any sentence authorized by statute, regardless of the agreement. Simply reviewing the maximum penalties with a defendant is not sufficient to put a defendant on notice that he or she may receive a longer sentence. *See Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261.

**{¶44}** Moreover, there are other references in the record that support Lumbus's argument that the trial court should have imposed the agreed three-year sentence. At the hearing on Lumbus's motion to withdraw his plea, the state told the court:

> Initially [Lumbus's previous defense counsel] and I approached this honorable court to see if the court would even entertain the idea of an agreed sentence. And the court, I see wisely, said: Only if there's a written agreement will I do that. And so the state crafted a written statement after much negotiations, after changing the terms of years, and Mr. Lumbus was insistent that he wanted three years as an agreed sentence if this court would offer that and allow that. And in exchange for the three years here, he would roll the dice with Judge Friedland on his other patter of corrupt activity case.

**{¶45}** Then at Lumbus's sentencing hearing, when the state first spoke, it asked the court to "follow what the court agreed to do." It informed the court that Lumbus "is left to cooperate or not cooperate on the other case," but it said that Lumbus "did make a

statement," which "implicate[d] other individuals." The state later said, "Mr. Lumbus has kept his part of the bargain and I will see that, if possible, he will continue to keep his part of the bargain." The state further explained that it would "work out some other arrangements for him if he doesn't like the arrangement that he has right now in Judge Friedman's [sic] room. It's pretty much up in the air. However, I would ask the court to impose his three years and then we will continue moving forward."

{¶46} At that point, for the first time, the trial court indicated that it was not "inclined and not required to adhere to the three years."

{¶47} After the court sentenced Lumbus to five years, at the very end of the sentencing hearing, the state attempted to place on the record that the court was not required to follow the plea agreement because "Mr. Lumbus is really in breach of his plea agreement." The state further tried to "make the record clear here, in case the record [was] confusing," that Lumbus "was not in compliance with his plea agreement." The state explained that Lumbus told the state to "forget the deal," and "cast his girlfriend Talanda Woods to the dogs." According to the state, after the trial court had sentenced Lumbus to five years, "the court was not bound by anything."

{¶48} It is our view, however, that the state's assessment, placed on the record at the end of the sentencing hearing, contradicted what the state had indicated at the beginning of the sentencing hearing — where it had informed the court that Lumbus had "kept his part of the bargain." Thus, we give more weight to the state's assertions given

at the beginning of the sentencing hearing — where it asked the court to do "what the court agreed to do."

{¶49} The trial court indicated that it added more time onto the agreed sentence of three years because Lumbus had "not taken responsibility" for what he had done — implying that because Lumbus had moved to withdraw his plea, he had not taken responsibility (stating that Lumbus "trying to get out from under [the plea] at this point is — is offensive"). The trial court explicitly stated that it would have gone along with the three-year sentence had Lumbus "taken responsibility." But Lumbus's guilty plea still stands — he still pleaded guilty to engaging in a pattern of corrupt activity, grand theft, and identity fraud. Further, Lumbus forfeited a large list of items that police had confiscated. And according to the state — at least at the beginning of the sentencing hearing — Lumbus had complied with his part of the bargain — at least as far as he could have at that point. There is nothing in the record to indicate that the other case had not been completed because of anything that Lumbus did or did not do.

{¶50} Thus, based on the facts and circumstances of this case, we find that the trial court accepted the plea agreement between the state and Lumbus — without informing Lumbus that (1) it could deviate from the plea agreement, and (2) sentence him to more than was agreed to. We further find that Lumbus had a reasonable expectation that he would be given a three-year sentence as part of his plea. Thus, Lumbus could not have voluntarily, knowingly, and intelligently entered into his plea.

{¶51} Therefore, we sustain both of Lumbus's assignments of error.

**{¶52}** Judgment reversed and remanded. Lumbus's sentence is vacated. Upon remand, the trial court is instructed to either impose the agreed three-year sentence or allow Lumbus to withdraw his guilty plea. *See Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
TIM McCORMACK, J., CONCUR