[Cite as *State v. Jordan*, 2024-Ohio-2361.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113226 |
| v. | : | |
| DANTE JORDAN, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 20, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-22-673061-A, CR-22-675801-A, and CR-23-677860-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jasmine Jackson, Assistant Prosecuting
Attorney, *for appellee.*

Kenneth D. Myers, *for appellant.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Dante Jordan, appeals from the trial court's judgments, rendered after guilty pleas to multiple counts of burglary and theft. For the reasons that follow, we reverse and remand.

{¶ 2} The state alleged that Jordan burglarized 14 different homes between December 4, 2021, and January 11, 2023. The state charged Jordan in Cuyahoga C.P. No. CR-22-675801 with ten counts of burglary, nine counts of theft (three of which identified the victims as elderly or disabled), two counts of grand theft (two firearms), and one count of petty theft. In Cuyahoga C.P. No. CR-22-673061, the state charged him with three counts each of burglary and theft. And in Cuyahoga C.P. No. CR-23-677860, the state charged Jordan with one count of burglary and theft.

{¶ 3} In September 2023, the cases were scheduled for trial. Following a brief recess, the state presented the trial court with an accepted packaged plea agreement, along with an agreed, recommended sentence of 15-18 years, with the condition of no early release. In Case No. 675801, Jordan pleaded guilty to five counts of burglary, in violation of R.C. 2911.12(A)(2) (Counts 1, 5, 11, 15, and 17); three counts of theft, in violation of R.C. 2913.02(A)(1) (Counts 4, 6, and 10); and one count of grand theft, in violation of R.C. 2913.02 (Count 18). Regarding Case No. 673061, Jordan agreed to plead guilty to two counts of burglary (Counts 3 and 5) and one count of theft (Count 2). And in Case No. 677860, he agreed to plead guilty to one count of burglary (Count 1). In addition to pleading guilty, Jordan also agreed to have no contact with the victims and pay restitution.

{¶ 4} The following day, the trial court sentenced Jordan to a stated minimum prison term of 32 years with a maximum of 36 years and ordered him to have no contact with the victims and pay restitution. This appeal followed.

## I. Crim.R. 11 — Plea

{¶ 5} On September 6, 2023, Jordan appeared before the trial court, supposedly for trial. The court noted that Jordan was currently serving a six-year sentence out of Lake County and "may have been on postrelease control at the time of these cases." (Tr. 3.) Defense counsel advised the trial court that the state made a plea offer and that counsel "extensively reviewed the agreed recommended sentence for the court's consideration as a package resolution in all three of these matters," but that Jordan requested new counsel and a psychiatric evaluation. (Tr. 4.)

{¶ 6} Jordan told the trial court that he felt that counsel was not representing him to the best of her ability and that he did not even know that he was appearing for trial. After some discussion between the trial court and Jordan, the court denied his request for new counsel and advised that the matter would proceed to trial that day. The court then stated:

> It's my understanding that you were on a GPS monitoring device when you committed some, if not all, of these crimes. It's my understanding also that there's DNA evidence against you. If I were you, I would consider cutting my loss and entertaining a plea agreement, but that's up to you.

(Tr. 9.) The trial court stood in recess for Jordan to change his clothes, if he wished, for trial.

{¶ 7} After the recess, the state advised the court that the parties had reached a plea agreement. The state presented the trial court with an accepted packaged plea agreement, along with an agreed, recommended sentence of 15-18

years, with the condition of no early release.  In addition to pleading guilty, Jordan would also agree to have no contact with the victims and pay restitution.

{¶ 8}    During the state's presentation of the plea agreement, the trial court interrupted the prosecutor because Jordan was apparently confused with statements made by the state.  The court inquired:

> THE COURT: Hold on a second.  Do we need to work something out more?  Counsel. Counsel.
>
> THE DEFENDANT: Your Honor, I'm not trying to upset you or anything.  I'm just trying to understand what's going on with my life right here today.  I told you I'm not even understanding of — of everything of what's going on right now.
>
> THE COURT:  Well, it would help to listen when the prosecution is outlining the plea agreement instead of taking [sic] to your lawyer.  So what don't you understand?
>
> JORDAN:  The things that they just going — what the time-wise me — they said 15 years with no early release.  I'm not understanding that.
>
> THE COURT:  What's not clear about 15 to 18 with no early release?  It seems pretty straightforward.  You do 15 to 18 years and you don't get out early.
>
> JORDAN:  Day for day?
>
> THE COURT:  I don't know what you're talking about day for day.
>
> JORDAN:  So that mean I would have to do 15 years day for day?
>
> THE COURT:  Yeah.  You do every day of the 15 years.

(Tr. 11-12.)

{¶ 9}    The state finished setting forth the plea agreement.  The prosecutor explained that although discovery had been exchanged, certain pieces of evidence might be missing, but,

> [t]hese cases have been fully pretried and no threats or promises or inducements were made except for the joint recommended sentence to the defendant in order for him to accept this plea.  Thank you.

(Tr. 14.)  Defense counsel stated that the plea agreement as set forth by the state was her and Jordan's understanding — "We have discussed at length the possibility of penalties if the Court were to accept the agreed recommended sentence."  (Tr. 14-15.)  Jordan told the trial court that he would "take the plea."  (Tr. 15.)

{¶ 10}  The trial court then engaged in a plea colloquy, asking Jordan:

THE COURT:  Has anyone threatened you with anything or promised you anything outside of what we've said in court this morning to get you to enter into this plea agreement?

JORDAN:  Concurrent time, your Honor.

THE COURT:  That was not promised to you.

JORDAN:  It was not promised, but told I was getting concurrent time.

THE COURT:  That has not been promised to you.  Do you understand that?

JORDAN:  Yes, your honor.

(Tr. 16.)  The trial court then advised Jordan of his constitutional rights that he would be waiving if he entered into the plea agreement, which Jordan stated that he understood. (Tr. 16-20.)

{¶ 11}  Regarding penalties, the court advised him of the minimum and maximum penalties, including the application of the Reagan Tokes Law, on each count contained in the plea agreement.  When the state advised the court that none of the counts merged for sentencing, defense counsel objected, prompting the trial court to respond, "Okay.  Counsel, we're going to have a plea.  You have to be in

agreement on this." (Tr. 23.) After a small recess, the state conceded that Counts 17 and 18 merged, in Case No. 675801.

{¶ 12} After confirming with the state that the victims were in agreement with the plea offer, the court stated:

> THE COURT: Okay. The State is agreeing to a 15 to 18-year term without early release. I just want to make sure you understand that the State doesn't have any say in sentencing. That's the Court's job. I can sentence you any way I wish.
>
> JORDAN: Okay.
>
> THE COURT: Do you understand that?
>
> JORDAN: Yes.

(Tr. 25-26.)

{¶ 13} After advising Jordan about restitution and postrelease control, the court again stated:

> THE COURT: And again, lastly, do you understand the Court has not promised you any particular sentence in exchange for your entry into this plea agreement?
>
> JORDAN: You said that again, your Honor?
>
> THE COURT: Do you understand the Court has not promised you any particular sentence in exchange for your entry into this plea agreement?
>
> JORDAN: Yes.

(Tr. 27.)

{¶ 14} Jordan then entered his guilty pleas, which the court accepted, and the parties agreed that the court complied with Crim.R. 11. The trial court "hoped"

to proceed directly to sentencing, but the state requested time to reach out to the victims. The court continued sentencing until the following day.

{¶ 15} At sentencing the next day, the trial court reiterated the counts that Jordan had pleaded guilty to, stated that these cases were Jordan's "eighth, ninth, and tenth felony cases in Cuyahoga County Common Pleas Court," he was serving time out of Lake County, he had already served a consecutive sentence totaling 39 months, and was currently on probation with another judge in Cuyahoga County that was imposed "after the commission of these three crimes but before his arraignment." (Tr. 31-32.) The trial court then heard from (1) the prosecutor, who also read a victim-impact statement, (2) one of the victims who was present for sentencing, and (3) a Cleveland Heights detective. During this presentation, the trial court learned that Jordan had cut off his GPS monitor (a device he was ordered to wear as a condition of his parole) that he had worn during the commission of some of the burglaries. (Tr. 38-39.) The court also learned about how Jordan committed the offenses — by watching houses and waiting for the owners to leave. During one burglary, Jordan and another individual confronted a family's nanny while they were inside the home, and during another incident, the family dog was injured.

{¶ 16} As for mitigation evidence, Jordan's mother addressed the court, expressing disappointment and sadness for everyone involved. Jordan's defense counsel noted Jordan's criminal history and the circumstances surrounding this offense. Counsel stated that Jordan possibly has "undiagnosed mental health that has never been treated," but also that he was "using heavily throughout the crime

spree." (Tr. 57.) Counsel noted that Jordan was currently serving a prison sentence out of Lake County and requested a waiver of fines and costs to allow Jordan to make restitution to the victims. As for a prison sentence, counsel stated:

> If the Court is to consider the agreed recommended range that the State of Ohio and defense counsel were able to come to, we would respectfully request if the Court would run his time in Lake County concurrent with whatever sentence is deemed appropriate here.

> If the Court is to accept that range, I honestly, Judge, I think the best and maybe the only argument that I can make for a concurrent sentence in this case and with all the factors that have been presented is to maybe save the taxpayers of Cuyahoga County a little bit of money and have Lake County pay for the first six years of his incarceration. I know that is not an eloquent argument. It's not a tactful argument, but probably is the only argument I have and I've got to make it.

> . . .

> And again, asking the Court with much mercy, to respect and hopefully follow, the agreed recommended range at this time.

(Tr. 59.) Jordan also addressed the court, apologizing to the victims, his family, and to the cities where the incidents occurred, and accepting responsibility for his actions.

{¶ 17} The trial court then addressed Jordan for sentencing. The court stated:

> Mr. Jordan, you are a person that deserves to be separated from society for a long period of time. As I indicated at the start of this proceeding, [another trial court] in one of five or six cases noted your extensive juvenile history, you had six cases within four months with him. He saw fit to impose consecutive time with you. You got out and you went on another crime spree.

> The number of burglaries here, and these are real burglaries, these are breaking into the houses in the middle of the day or at various times of days, traumatizing the individuals, traumatizing Rottweilers,

traumatizing the community. This is no small amount of harm caused, and frankly other than a rape and a murder, it's hard to imagine a more harmful spree here.

(Tr. 67.) The court ordered him to pay restitution, advised him of postrelease release control, and imposed consecutive sentences for a total prison sentence of 32 to 36 years.

{¶ 18} In his first assignment of error, Jordan contends that he did not enter a knowing, intelligent, and voluntary plea because (1) he was unaware that he was even scheduled to appear in court, let alone for a trial; (2) when he did appear in court, he expressed that he wanted a new attorney due to a communication breakdown; (3) his attorney was not prepared for trial, asked to withdraw, and asked that Jordan receive a psychological evaluation; and (4) he believed that he would receive the agreed, recommended sentence of 15-18 years.

{¶ 19} Because a "guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29 (1992); *State v. Clark*, 2008-Ohio-3748, ¶ 25. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id*. The underlying purpose of Crim.R. 11 is to convey certain information to a defendant so they can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480 (1981).

{¶ 20} This court finds merit to Jordan's main challenge that his plea is invalid because the trial court deviated from the agreed, recommended sentence of 15-18 years.

{¶ 21} Crim.R. 11 requires that the defendant be fully aware of the potential consequences of his plea. "'Where a sentence recommendation is an integral part of a plea agreement, the failure to inform the defendant of potential changes may result in a plea that was not entered into knowingly, voluntarily, or intelligently.'" *State v. Dunbar*, 2007-Ohio-3261, ¶ 139 (8th Dist.), quoting *State v. Allgood*, 1991 Ohio App. LEXIS 2972, *9 (9th Dist. June 19, 1991).

{¶ 22} "'A trial court is vested with sound discretion when implementing plea agreements.'" *State v. Orlando*, 2013-Ohio-2335, ¶ 14 (8th Dist.), quoting *Dunbar* at ¶ 112. And the court is not obligated to follow the negotiated plea entered into between the state and the defendant. *Id.* "However, before the trial court imposes a longer prison sentence than what is recommended in the plea agreement, due process requires the trial court to put the defendant on notice of that possibility before accepting the guilty plea." *State v. Williams*, 2017-Ohio-2662, ¶ 4 (8th Dist.).

{¶ 23} "A trial court does not err by imposing a sentence greater than 'that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" *State v. Buchanan*, 2003-Ohio-4772, ¶ 13 (5th Dist.), citing *State v. Darmour*, 38 Ohio App.3d 160 (8th Dist. 1987), syllabus (finding no abuse of discretion when the trial

court forewarns a defendant that it will not consider itself bound by any sentencing agreement and defendant fails to change his plea after being advised); *State v. Tucci*, 2002-Ohio-6903 (7th Dist.) (before the court sentences the defendant, it must ascertain that the defendant understands that it can impose a higher sentence than that recommended by the prosecution and that no one promised him anything less than the maximum sentence).

{¶ 24} The state argues that Jordan was put on notice that the court might deviate from the recommended prison sentence when the court on two occasions advised him that it could "sentence any way I wish" and "the court has not promised you any particular sentence in exchange for your entry into this plea agreement." (Tr. 25 and 27.) Based on our review of the record, we agree with the state that the trial court advised Jordan that it had not promised him any particular sentence, including the sentence agreed to by the state.

{¶ 25} The problem, however, is that after the trial court decided it would not impose the agreed, recommended sentence but would impose a sentence nearly double than what was agreed and recommended by the state and the defense, it should have given Jordan an opportunity to reconsider his guilty plea.

{¶ 26} In *Warren v. Cromley*, 1999 Ohio App. LEXIS 206, *7-8 (11th Dist. Jan. 29, 1999), referring to the trial court's discretion on whether to accept a negotiated plea, the court stated:

> [T]he law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement before the court accepts the defendant's plea, and then deviates from the

recommended sentence or terms contained within the plea agreement at the time of sentencing. The analysis in these scenarios turns to due process concerns over whether the accused was put on [notice] that the trial court might deviate from the recommended sentence or other terms of the agreement before the accused entered his plea *and whether the accused was given an opportunity to change or to withdraw his plea when he received this notice.*

(Emphasis added.)

{¶ 27} Regarding an "agreed sentence that forms the basis of the plea, the sentence itself is part of the quid pro quo for the agreed plea. Although the trial judge is free to accept or reject that agreement, it is incumbent upon the court to do so expressly. To hold otherwise creates a false expectation in the mind of the defendant over the underlying nature of the plea agreement." *State v. Huffman*, 2018-Ohio-1192, ¶ 20 (8th Dist.). The overall concern is "whether the defendant 'had a reasonable expectation that the trial court would implement the agreed sentence.'" *State v. Lumbus*, 2013-Ohio-4592, ¶ 39 (8th Dist.), quoting *Dunbar*, 2007-Ohio-3261, at ¶ 129 (8th Dist.).

{¶ 28} Based on the record before this court, we find that Jordan had a reasonable expectation that the trial court would implement a sentence within the agreed sentencing range of 15 to 18 years. During the state's presentation of the plea, Jordan expresses confusion about "no early release." The court explained that under the plea agreement, Jordan would "do 15 to 18 years and you don't get out early," and "[y]ou do every day of the 15 years." Additionally, the state acknowledged during the plea hearing that the only promise made to Jordan was the agreed, recommended sentence of 15 to 18 years, with no early release, restitution, and no

contact with the victims. The court reiterated this promise when the court asked Jordan whether "anyone promised you anything outside of what we've said in court this morning to get you to enter into this plea agreement." When Jordan noted he was told "concurrent time," the court rightfully advised him that he was not promised that — the agreement did not include concurrent time, but rather 15-18 and no early release.

{¶ 29} The record is clear that the trial court knew at the time of the plea the nature of the offenses, Jordan's criminal history (including his current confinement), and that Jordan allegedly committed some of the offenses while on parole supervision and wearing a GPS monitoring device. In fact, the trial court wanted to proceed directly to sentencing after accepting Jordan's plea, without obtaining a presentence-investigation report, even though there were multiple victims who were seeking restitution and were not present that day to provide impact statements. The trial court's desire to proceed directly to sentencing would also lend credence to Jordan's reasonable expectation that the trial court would impose a sentence within the agreed sentencing range.

{¶ 30} If the trial court's decision to proceed directly to sentencing was based on its predetermined intention that it would not sentence Jordan in accordance with the agreed, recommended sentence, then the trial court erred in accepting Jordan's plea without advising the parties that it was not accepting the recommended sentence. When a trial court decides not to impose the agreed, recommended sentence, it should clearly advise a defendant of its intentions, and allow the

defendant to reconsider his plea. *State v. Swortchek*, 2020-Ohio-2831, ¶ 25 (8th Dist.), citing *Dunbar*, 2007-Ohio-3261, at ¶ 140 (8th Dist.), citing *Allgood*, 1991 Ohio App. LEXIS 2972, at *10 (9th Dist.). If Jordan had then chosen to still plead guilty, there would be no error because he would have been fully informed that the court was not imposing sentence as agreed and recommended.

{¶ 31} Regardless of when the trial court in this case determined that it would deviate from the agreed, recommended sentence, we find that the trial court committed error because it did not expressly reject the agreed, recommended sentence prior to accepting Jordan's guilty plea or give Jordan an opportunity to withdraw his plea.

{¶ 32} Trial courts must be mindful that an appearance of a "bait and switch" could exist in circumstances when the court deviates from an agreed, recommended sentence when a defendant has a reasonable expectation that the court will impose that sentence. *See State v. Elliott*, 2021-Ohio-424, ¶ 17 (1st Dist.), quoting *State v. Cox*, 1990 Ohio App. LEXIS 4955, *3-4 (4th Dist. Oct. 23, 1990) (Grey, J., dissenting) ("[T]he court may listen to the prosecutor's recommendation of an unacceptable sentence, accept a plea of guilty based on that recommendation, but then ignore the prosecution's recommendation and yet still hold the defendant to this guilty plea. This smacks of the bait and switch tactics of consumer fraud.").

{¶ 33} Accordingly, we find merit to Jordan's first assignment of error that he did not enter a knowing plea because the trial court imposed a substantially

greater sentence than what was agreed and recommended without giving him an opportunity to withdraw his plea. The assignment of error is sustained.

{¶ 34} Having found merit to Jordan's first assignment of error, his remaining assignments of error challenging his trial counsel's representation, and the trial court's unlawful imposition of consecutive sentences and of a sentence on a dismissed count, are hereby rendered moot. *See* App.R. 12(A)(1)(c).

{¶ 35} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR